IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| JOHN BARTO CLARK | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 3:19-CV-2126-K |
| | § | |
| CITY OF BURLESON, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is City of Burleson's Second Motion & Brief to Dismiss (Doc. No. 11) and Officer Thompson's & Officer Giddings' Motion & Brief to Dismiss (Doc. No. 17) (Together, the "Motions to Dismiss"). After reviewing the underlying facts, briefs, and relevant caselaw, the Court **GRANTS** the Motions to Dismiss. Because the Officers had probable cause to make an arrest, Clark's claim for false arrest fails. Because Clark does not allege an injury from the force used by Officer Thompson, his claim for excessive force fails. Because Clark fails to identify a specific policy or policymaker, the claims against the City of Burleson fail. Because Clark cannot proceed with any of the attempted claims, both Motions to Dismiss (Doc. Nos. 11 and 17) are granted.

I. **Factual and Procedural History**

The claims in this case revolve around two separate incidents in which Officers Thompson and Giddings arrested John Barto Clark after determining that Clark was a

1

threat to himself or others. In both situations, the Officers were responding to calls from Clark's wife, Christi Clark, alleging that John Clark was at risk of committing suicide. The first arrest occurred on September 6, 2017, when Officer Thompson and Officer Giddings entered a hotel room where Clark was staying and began to question Clark about what medication Clark had in the room. Clark alleges that, during the questioning, Thompson drew his taser gun and pointed it at Clark. Clark was then detained on Thompson's orders by Forth Worth police officers who were also present. Clark was admitted to John Peter Smith hospital for a mental evaluation and was discharged the next day.

On October 10, 2017, Christi Clark again called about Clark's potential suicide threat. Upon arrival, Thompson entered Clark's bedroom and began questioning Clark about his consumption of medication. Thompson "rifle[d] through the drawers, located a pill bottle, emptied the contents on a table, and then claimed he had information that Clark had swallowed a handful of pills." The parties moved to a different room, at which point Clark observed Giddings "standing in Clark's garage in a menacing fashion." Clark informed Officer Thompson that he had taken the prescribed amount of his medication, to which Thompson stated, "don't make me do this again." Clark submitted to arrest and was again brought to John Peter Smith hospital and was released the next day.

Clark alleges he was not suicidal and that the Officers had to no reason to believe that he was, but that Officer Thompson and Officer Giddings only performed the arrest

because they were "doing the bidding" of his wife Christi Clark. Clark alleges that the Officers were carrying on an intimate relationship with Christi and were willing to perform the arrests in order to assist Christi in the upcoming divorce proceedings. These allegations form the basis for the false arrest and excessive force claims, which Clark brings under 42 U.S.C. § 1983. Clark argues that the Officers knew he was not a suicide threat but performed the arrest as a favor to Christi Clark—which constituted a false arrest. Because there was allegedly no basis for the arrest, any use of force is excessive.

Following these events, Clark contacted the Burleson Police Department on multiple occasions to file a criminal complaint against the Officers as well as Christi Clark. The Police Department did not dispatch an officer to meet with Clark on any of the occasions. During one of the phone calls, the Police Sergeant Jae Berg allegedly "laugh[ed] at Clark, [] refused to take Clark's criminal complaint, and suggest[ed] that Clark contact the National Security Agency or the Federal Bureau of Investigation for assistance." Clark attempted to schedule a meeting with Police Chief Billy Cordell to discuss both the conduct of Officer Thompson, Officer Giddings, and Sergeant Berg, which was scheduled then cancelled. The same order of events occurred with Captain Randy Crum and, after Captain Crum cancelled the meeting, Clark was referred back to Sergeant Berg.

In his Complaint (Doc. No. 7), Clark alleges that the Burleson Police Department has a an unofficial, though widespread, policy or custom of doing "favors"

3

for their friends and romantic interests in violation of the constitutional rights of others. Clark alleges that there have been 55 administrative complaints against the Burleson Police Department over the past 10 years, which is evidence that the alleged policy is widespread. Clark does not know the specifics of the administrative complaints, though alleges that discovery will likely reveal that many of them are like the facts of this case. Clark does not identify a policymaker, but similarly claims this will be revealed in discovery.

The City of Burleson moved to dismiss (Doc. No. 11) on the grounds that Clark did not identify an adequate basis for *Monell* liability because he failed to provide specific facts supporting the existence of the policy and failed to identify a policymaker. Officers Giddings and Thompson also moved to dismiss (Doc. No. 17) on the grounds that the existence of probable cause defeats any claim for false arrest and that Clark was not injured by any use of force.

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under

Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id*. at 556.

**III. Analysis**

Because Officer Thompson and Officer Giddings had probable cause to perform the arrest, Clark's claim of false arrest claim fails. Because Clark fails to identify any injury from the Officers' use of force, his excessive force claim fails. Because Clark does not identify any policy past vague, conclusory allegations and does not identify any policymaker at all, the claims against the City of Burleson fail.

A. <u>Because Officer Thompson and Officer Giddings had probable cause to perform the arrest, there is no basis for Clark's false arrest claim.</u>

Clark's first claim is that Officer Thompson and Officer Giddings violated his constitutional rights by performing a false arrest because there was no warrant for his arrest nor did probable cause to perform the arrest exist. Although Clark admits that the Officers were responding to a call about a potential suicide threat, Clark alleges

5

that the call constituted false pretenses, which the Officers acted on in bad faith as part of "doing the bidding" of Christi Clark.

Clark brings suit under 42 U.S.C. § 1983, which allows Officer Thompson and Giddings to raise the defense of Qualified Immunity. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). To succeed on a claim where Qualified immunity is raised, a plaintiff must over come both prongs of the analysis: showing that a constitutional violation occurred and that the law regarding the violation was clearly established at the time of incident. *Id*. The "constitutional torts" of false arrest, unreasonable seizure, and false imprisonment require a showing of no probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). "Probable cause is not a high bar." *D.C. v. Wesby*, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (internal quotations omitted). Probable cause exists where the facts and circumstances within the officer's knowledge at the time of the seizure are sufficient for a reasonable person to conclude that an individual is mentally ill and poses a substantial risk of serious harm. *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012). Probable cause turns on state law. *Id*. Texas has an emergency detention statute that allows a mentally ill person to be apprehended. *Id*.

Because Officer Thompson and Officer Giddings had probable cause based on an objective analysis of the facts, Clark's claim for false arrest fails. Clark admits that, on both occasions, the Officers were responding to a call about Clark being a suicide threat. When the Officers arrived, they located the pills which were allegedly used in

the suicide attempt. In this situation, the Officers had a sufficient basis to conclude that Clark might be a danger to himself and that it would be in his best interest to be submitted for mental evaluation. Clark argues that the Officers were there to "do the bidding" of Christi Clark and that their intent was to help her in the upcoming custody proceedings. The Supreme Court has made it clear that Fourth Amendment violations are examined under an objective analysis. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id*. Clark acknowledged that both incidents were preceded by a call alleging that Clark was a suicide threat. In both situations, Officer Thompson located the pill bottle that was allegedly involved in the suicide attempt. These facts provided Officer Thompson and Officer Giddings with a sufficient basis to determine Clark might be a threat to himself or others. Whether Officer Thompson and Officer Giddings had the subjective intent to help Christi Clark does not negate the existence of facts that objectively established probable cause. Because probable cause existed, the claim for false arrest fails.

- B. <u>Because Clark fails to allege any injury, he cannot prevail on an excessive force claim.</u>

Clark's second claim against Officer Thompson and Officer Giddings is for excessive force. The alleged uses of force include Officer Thompson's removing him

from the bed and handcuffing him during the first incident and pointing a taser at him during the second. The only allegation against Officer Giddings is that he "stood menacingly" in the garage, but that he is liable due to his failure to intervene.

To succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). A plaintiff asserting an excessive force claim is required to have 'suffered at least some form of injury.'" *Id*. Temporary pain from handcuffing does not constitute excessive force. *Id*. Nor does merely pointing a taser gun. *Cf. Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1229 (5th Cir. 1988) (pointing a pistol does not constitute excessive force).

Because Plaintiff does not even allege an injury, the claim for excessive force must fail. The accusations of force by Officer Thompson are *de minimis* and, importantly, do not allege any injury of any type. Plaintiff's excessive force claim essentially argues that, because the arrest was allegedly in bad faith, any use of force is excessive under the *Graham* balancing test. *See Graham v. Connor*, 490 U.S. 386, 390 (1989) (applying a four-factor test to determine whether the use of force was excessive to the need). But the Court does not proceed to the second element of the excessive force analysis because Clark's claim fails on the first. Nowhere in the complaint does Clark allege an injury of any sort. In the prayer for relief, Clark requests actual damages and mental anguish damages, although he does not make any specific factual

allegations that support the request. Because there is no injury alleged, the excessive force claim fails. Officer Giddings cannot be liable under a bystander theory because Clark has not established that Officer Thompson used excessive force in performing the arrest. *See McDonald v. McClelland*, 779 F. App'x 222, 227 (5th Cir. 2019) (Plaintiff must show that the bystander knew that a fellow officer is violating an individual's constitutional rights and then point to clearly established law that would require intervention under the circumstances).

C. <u>Because Clark does not identify any policy past vague, conclusory allegations and does not identify any policymaker at all, the claims against the City of Burleson fail.</u>

Clark extends his theory that the Officers were doing romantic favors to the City of Burleson as a whole. In the Complaint, Clark alleges that "officers of the Burleson Police Department do 'favors' for their friends and romantic interests in violation of and notwithstanding the constitutional rights of others." In support of this broader policy, Clark points to the 55 administrative complaints over the ten-year span. He also relies on the way the Burleson Police Department handled the situation when he attempted to file complaints against the Officers and Christi Clark.

Municipalities and other local government units qualify as "persons" under § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 689 (1978)). However, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id* at 694. "[M]unicipal liability under section 1983 requires proof of three elements: a

policymaker; an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Liability must rest on official policy, meaning the city government's policy and not the policy of an individual official. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). To meet the "official policy" element, the plaintiff must either allege (1) a written policy or procedure that is officially adopted or promulgated by the policymaking authorities of a governmental agency; or (2) a persistent, widespread practice of governmental agency officials or employees which, although not officially promulgated or adopted, is so common and well settled as to constitute a policy or custom that fairly represents the agency's policy. *Id*. at 579. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Because Clark does not allege a written policy that is officially adopted, he proceeds under the theory that the policy of "doing favors" is so widespread and persistent that it fairly represents the agency's policy.

Because Clark fails to identify a policymaker or allege the existence of a widespread and persistent policy with any factual specificity, his claim against the City fails. Clark's primary contention is that the 55 administrative complaints over a ten-year period are evidence that the alleged policy is widespread and persistent. Plaintiff does not have any proof, nor allege, that the complaints are like the one at bar. He merely alleges that the complaints *could* show a pattern of behavior like that alleged by Clark. This is the

exact type of vague pleading to unlock discovery that the Court rejected in *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (Rule 8. . .does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions). Because he cannot support his allegations of an official policy or custom with anything more than vague, conclusory statements and a reference to administrative complaints that he speculates might show a pattern of conduct, his claim against the City of Burleson cannot stand. The same applies to his allegations regarding the failure to adequately train the City of Burleson police, they consist of boilerplate accusations devoid of any factual specificity. These accusations do not survive a 12(b)(6) motion. *Id*. at 681 (These bare assertions. . .amount to nothing more than a "formulaic recitation of the elements" of a constitutional [] claim . . . As such, the allegations are conclusory and not entitled to be assumed true.). Because Clark has failed to identify any policymaker or any policy with factual specificity, the claim against the City of Burleson fails.

IV. Conclusion

Because Officer Thompson and Officer Giddings had probable cause to perform the arrest, there is no basis for Clark's false arrest claim. Because Clark fails to allege any injury, he cannot prevail on an excessive force claim. Because he cannot support his allegations of an official policy or custom with anything more than vague, conclusory statements and a reference to administrative complaints that he speculates might show a pattern of conduct, his claim against the City of Burleson cannot stand. Because Clark

cannot proceed with any of his attempted claims, both Motions to Dismiss are **GRANTED**.

    **SO ORDERED.**

    Signed February 11th, 2020.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE